UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| O.A.C.S.,<br><br>   Petitioner,<br><br>   v.<br><br>MINGA WOFFORD, et al.,<br><br>   Respondents. | No. 1:25-cv-01652-DAD-CSK (HC)<br><br>ORDER GRANTING *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION TO PROCEED UNDER PSEUDONYM<br><br>(Doc. Nos. 2, 4) |

This matter is before the court on petitioner's *ex parte* motion for a temporary restraining order and petitioner's motion to proceed under pseudonym filed on November 26, 2025. (Doc. Nos. 2, 4.) For the reasons explained below, the court will grant petitioner's motions.

**BACKGROUND**

On November 26, 2025, petitioner O.A.C.S. filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his detention by United States Immigration and Customs Enforcement ("ICE"). (Doc. No. 1.) Petitioner asserts two claims in that petition: (1) deprivation of procedural due process in violation of the Fifth Amendment; and (2) deprivation of substantive due process in violation of the Fifth Amendment. (*Id.* at ¶¶ 64–74.) In support of the pending motion for temporary restraining order, petitioner provides evidence of the following.

/////

1

Petitioner is a citizen of Peru and entered the United States on November 30, 2023. (Doc. No. 1-2 at ¶ 2.) On November 30, 2023, petitioner was detained by immigration authorities. (*Id.*) On December 1, 2023, the Department of Homeland Security ("DHS") released petitioner on his own recognizance and provided him with a notice to appear in immigration court and an instruction to report to the ICE office in Bakersfield, California. (*Id.* at ¶ 4.) On May 1, 2024, petitioner reported to the ICE field office located in Bakersfield, at which ICE confiscated his passport and placed him under the Intensive Supervision Appearance Program ("ISAP"). (*Id.* at ¶ 6.) Petitioner largely complied with the requirements of his ISAP release. (*Id.*) However, on multiple occasions, petitioner missed scheduled video calls or photo check-ins due to technical issues. (*Id.* at ¶ 7.) Petitioner has since continued to pursue applications for relief from removal by applying for asylum and withholding of removal. (*Id.* at ¶ 9.) On October 16, 2025, ISAP scheduled an in-person visit at petitioner's residence, which he was not present for due to briefly running an errand during the day. (*Id.* at ¶ 10.) The following day, October 17, 2025, petitioner reported to the ISAP office and was arrested for failing to be present for his ISAP appointment the prior day. (*Id.* at ¶ 11.)

On November 26, 2025, petitioner filed the pending motion for temporary restraining order. (Doc. No. 2.) In that motion, petitioner requests that the court order his immediate release from custody, enjoin respondents from re-detaining him absent notice and a hearing before an immigration judge, and enjoin respondents from removing him.[1] (*Id.* at 25–26.) On November 26, 2025, the court directed petitioner's counsel to serve respondents with a copy of the petition, the motion for temporary restraining order, and accompanying papers, and set a briefing schedule

---

[1] Petitioner provides no argument in his pending motion for temporary restraining order addressing whether the court is authorized to enjoin his removal to another country "until these proceedings have concluded." (Doc. No. 2 at 8.) It does not appear to the court that petitioner is currently subject to a final removal order and the court has no authority to enjoin ongoing removal proceedings. *See Maxwell v. Nielsen*, No. 2:14-cv-02772-TLN-AC (PS), 2018 WL 6304886, at *7 (E.D. Cal. Dec. 3, 2018) ("[T]he district court lacks authority to intervene in ongoing removal proceedings."), *report and recommendation adopted in part sub nom.*, *Maxwell v. Holder*, 2018 WL 6831133 (E.D. Cal. Dec. 28, 2018). Accordingly, the court will deny petitioner's request for an order restraining respondents from removing petitioner without prejudice.

2

on the pending motion. (Doc. No. 7.) On December 1, 2025, respondents filed an opposition to the pending motion. (Doc. No. 11.)

## LEGAL STANDARD

### A. Motion for Temporary Restraining Order

The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'"); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). A plaintiff seeking a preliminary injunction must make a showing on all four of these prongs. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The Ninth Circuit has also held that "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Id.* at 1134–35 (citation omitted). The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *see also Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief."). Finally, an injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

The likelihood of success on the merits is the most important *Winter* factor. *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). Plaintiff bears the burden of

1  demonstrating that he is likely to succeed on the merits of his claims or, at the very least, that
2  "serious questions going to the merits were raised." *All. for Wild Rockies*, 632 F.3d at 1131.

3  **B.     Motion to Proceed Under Pseudonym**

4  "[M]any federal courts, including the Ninth Circuit, have permitted parties to proceed
5  anonymously when special circumstances justify secrecy." *Does I thru XXIII v. Advanced Textile*
6  *Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000). "In this circuit, . . . parties [may] use pseudonyms in
7  the 'unusual case' when nondisclosure of the party's identity 'is necessary . . . to protect a person
8  from harassment, injury, ridicule or personal embarrassment.'" *Id.* at 1067–68 (quoting *United*
9  *States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981)). "[A] district court must balance the need
10 for anonymity against the general presumption that parties' identities are public information and
11 the risk of unfairness to the opposing party." *Id.* at 1068.

12      The Ninth Circuit has identified three situations in which parties have been allowed to
13 proceed under pseudonyms: "(1) when identification creates a risk of retaliatory physical or
14 mental harm; (2) when anonymity is necessary to preserve privacy in a matter of sensitive and
15 highly personal nature; and (3) when the anonymous party is compelled to admit [his or her]
16 intention to engage in illegal conduct, thereby risking criminal prosecution . . . ." *Id.* (citations
17 and internal quotation marks omitted). A party requesting to proceed pseudonymously has the
18 burden of showing that their "need for anonymity outweighs prejudice to the opposing party and
19 the public's interest in knowing the party's identity." *Id.* at 1068–69. "When a party requests
20 Doe status, the factors to be balanced against the general presumption that parties' identities are
21 public information, are: (1) the severity of the threatened harm; (2) the reasonableness of the
22 anonymous party's fears; and (3) the anonymous party's vulnerability to such retaliation." *Doe v.*
23 *Ayers*, 789 F.3d 944, 945 (9th Cir. 2015) (internal quotation marks, brackets, and ellipses
24 omitted).
25 /////
26 /////
27 /////
28 /////

4

# DISCUSSION

**A.     Motion for Temporary Restraining Order**

      1.     <u>Likelihood of Success on the Merits</u>

           a.     *Statutory Framework*

Respondents argue that petitioner is subject to mandatory detention as an "applicant for admission" who has been placed in 8 U.S.C. § 1229a removal proceedings pursuant to 8 U.S.C. § 1225(b)(2)(A). (Doc. No. 11 at 4–14.) Petitioner instead contends that he is detained pursuant to 8 U.S.C. § 1226(b) and does not address whether 8 U.S.C. § 1225 applies to him or whether he has a sufficient liberty interest under that statutory authority entitling him to a bond hearing. (Doc. No. 2 at 13–14.) Accordingly, the court must determine under what statute petitioner is currently detained in order to ascertain the requisite procedures and liberty interest at issue.

Another district court has aptly summarized the various detention regimes available under the Immigration and Nationality Act ("INA") as follows:

> The INA generally provides for three forms of civil detention for noncitizens in removal proceedings. First, 8 U.S.C. § 1226 authorizes the detention of noncitizens arrested "on a warrant" pending the resolution of standard removal proceedings before an IJ. *See* 8 U.S.C. § 1229a. Unless they have been arrested, charged with, or convicted of certain enumerated crimes, which would subject them to mandatory detention until their removal proceedings are concluded, *see* 8 U.S.C. § 1226(c), an individual under § 1226(a) can be released by ICE on bond or conditional parole. *See* 8 U.S.C. § 1226(a)(1); 8 C.F.R. § 236.1(c)(8). If release is denied by ICE, the detainee can seek a custody redetermination before an IJ (*i.e.*, bond hearing) at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d). At the hearing, the noncitizen may present evidence to show they are not a flight risk of danger to the community and should therefore be released on bond.
>
> Second, the INA imposes mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and of an "applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted" under § 1225(b)(2). Individuals detained under § 1225(b) receive no bond hearing, *see* 8 U.S.C. § 1225(b)(1)(B)(ii), (iii)(IV), (b)(2)(A), and can only be released under humanitarian parole at the arresting agency's (*i.e.*, ICE) discretion. *See Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018).
>
> Lastly, the INA provides for detention of noncitizens who have been issued a final order of removal. *See* 8 U.S.C. § 1231(a)–(b).

5

1  *Maldonado Vazquez v. Feeley*, — F. Supp. 3d —, 2025 WL 2676082, at *3–4 (D. Nev. 2025)
2  (cleaned up).  Respondents' position is that the plain language of § 1225(b)(2)(A) makes
3  detention mandatory for an "alien seeking admission" currently in removal proceedings under §
4  1229a.  (Doc. No. 11 at 5.)  Respondents argue that petitioner is an "applicant for admission"
5  because he is "an alien present without admission" and accordingly endorses an interpretation of
6  "applicant for admission" that encompasses any "alien[] . . . present in the United States without
7  admission[.]"  (*Id.* at 6, 8.)

8        As detailed above, petitioner has provided evidence that he was detained within a day of
9  his entry of the United States by immigration authorities.  He was subsequently released, with his
10 notice of appearance indicating that he was "released on [his] own recognizance" "[i]n
11 accordance with section 236 [§ 1226] of the INA[.]"  (Doc. No. 1-3 at 2.)  As numerous courts
12 have observed, the initial decision to release petitioner under § 1226(a) precludes the government
13 from later "switch[ing] tracks" to subject him to mandatory detention under § 1225(b)(2) because
14 petitioner's release created a "reliance interest . . . so long as [petitioner] abided by the terms of
15 [his] release."  *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503, at *8 (N.D.
16 Cal. Sept. 12, 2025); *see also Oliveros v. Kaiser*, No. 25-cv-07117-BLF, 2025 WL 2677125, at
17 *4 (N.D. Cal. Sept. 18, 2025) ("[A]s a matter of statutory authority, 'the Government cannot
18 simply switch tracks' from § 1226(a) to § 1225(b)(2).") (citing *Lopez Benitez v. Francis*, No. 25-
19 cv-05937-DEH, 2025 WL 2371588, at *5–9 (S.D.N.Y. Aug. 13, 2025) (finding that the petitioner
20 was detained pursuant to § 1226(a) where he had been released under that statute and consistently
21 treated under that detention authority)); *Souza v. Robbins*, No. 1:25-cv-01597-DJC-JDP, 2025
22 WL 3263897, at *2 (E.D. Cal. Nov. 23, 2025) (finding that the petitioner was released under §
23 1226(a) and could not subsequently be detained pursuant to § 1225(b)(2)); *Otero ex rel. Caicedo-*
24 *Ruiz v. Kaiser*, No. 25-cv-06536-NC, 2025 WL 3301056, at *8 (N.D. Cal. Nov. 26, 2025) ("It
25 follows that Caicedo-Ruiz was and is subjected to § 1226(a), and not § 1225(b)(2), and therefore
26 is protected by the Due Process rights created by § 1226(a).  Additionally, because Caicedo-Ruiz
27 can only be subjected to § 1226(a), it does not matter whether the Government has the authority
28 to detain Caicedo-Ruiz under § 1225(b)(2) in the first place.").  Because the court finds that

petitioner is detained pursuant to § 1226(a), it need not decide whether petitioner could otherwise be considered "an applicant for admission."[2]

        b. *Due Process*

Having concluded that petitioner is subject to the detention authority established by § 1226(a), the court incorporates its prior analysis in *Perez v. Albarran* to conclude that petitioner has demonstrated that he has a protected liberty interest in his continued release and that due process requires that petitioner be provided with a bond hearing. No. 1:25-cv-01540-DAD-CSK (HC), 2025 WL 3187578, at *2–4 (E.D. Cal. Nov. 14, 2025); *see also Souza*, 2025 WL 3263897, at *3 (concluding that the petitioner had a protected liberty interest in her continued release under § 1226(a) and that due process required additional procedural safeguards).

Respondents argue that petitioner's re-detention was appropriate because there were changed circumstances that justified his re-detention and therefore that immediate release is not warranted. (Doc. No. 11 at 16–17.) Specifically, respondents contend that petitioner violated the conditions of his ISAP multiple times by failing to attend certain electronic check-ins and failing

---

[2] The court notes that there exists persuasive authority that respondents' construction of § 1225(b)(2) is incorrect as a matter of law, but the court need not and does not decide that issue here. *See Bautista v. Santacruz*, — F. Supp. 3d —, 2025 WL 3289861, at *8–11 (C.D. Cal. 2025) ("Thus, Respondents' expansive interpretation of 'applicants for admission' would effectively nullify a portion of the INA through the DHS's legislative or interpretive exercise of power. Neither is appropriate under the separation of powers."); *see also Salcedo Aceros*, 2025 WL 2637503, at *8–12 (applying tools of statutory construction in rejecting respondents' construction of applicant for admission); *Valencia Zapata v. Kaiser*, — F. Supp. 3d —, 2025 WL 2741654, at *10 (N.D. Cal. 2025) ("District courts around the country have rejected the government's position that § 1225(b)(2) permits it to pursue mandatory detention against noncitizens who have not been lawfully admitted but have been present in the country for years."); *Rodriguez v. Bostock*, — F. Supp. 3d —, 2025 WL 2782499, at *18 (W.D. Wash. 2025) ("Put another way, § 1226(c)(1)(E)'s mandatory detention for inadmissible noncitizens who are implicated in an enumerated crime, including those 'present in the United States without being admitted or paroled,' would be meaningless since all noncitizens 'present in the United States who ha[ve] not been admitted' would already be subject to mandatory detention under the government's reading."); *but see Chavez v. Noem*, — F. Supp. 3d —, 2025 WL 2730228, at *4–5 (S.D. Cal. 2025) (finding that the respondents' construction did not render § 1226 superfluous because that section would still be operative as to aliens who were admissible but were convicted of certain crimes); *Valencia v. Chestnut*, — F. Supp. 3d —, 2025 WL 3205133, at *2–4 (E.D. Cal. 2025) (adopting the respondents' construction on the basis that "applicant for admission" does not describe the act of seeking admission but instead the legal status associated with not being lawfully admitted but remaining present in the United States).

to be present on October 16, 2025, at the in-person visit to his home. (*Id.*) The court finds the court's reasoning in *Martinez Hernandez v. Andrews* to be instructive on when immediate release is an appropriate remedy for detentions based on such violations:

> The Supreme Court has held that "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). However, the Court also recognized that there may be situations that urgently require arrest in which a prompt post-deprivation hearing is appropriate. *Id.* at 128 (noting there may be "special case[s]" where a pre-deprivation hearing is impracticable); *Guillermo M. R. v. Kaiser*, No. 25-cv-05436-RFL, 2025 WL 1983677, at *9 (N.D. Cal. July 17, 2025) ("absent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ"). The rapidly developing caselaw on this subject gives limited guidance as to where this line should be drawn. Those courts that have addressed detention-related habeas petitions brought by persons released on [Alternatives to Detention ("ATD")] have required pre-deprivation process, but in somewhat different circumstances. In *E.A. T.-B v. Wamsley*, No. 25-cv-01192-KKE, 2025 WL 2402130, at *4 (W.D. Wash. Aug. 19, 2025), the district court ordered the release of a petitioner arrested by ICE immediately after appearing in immigration court. That court agreed with the petitioner that ICE's *post hoc* explanation that ATD violations warranted his detention was pretextual, given that ICE first became aware of petitioner's alleged ATD violations a few hours before his immigration hearing, DHS did not raise those violations at the hearing or argue the petitioner should be detained for any reason, and the petitioner was then provided multiple, inconsistent justifications for his arrest.
>
> * * *
>
> Here, in contrast, Petitioner's ATD records indicate numerous violations. While Petitioner has offered explanations for them, the allegations are not obviously pretexual [sic] as in *E.A. T.-B*. The fact that the violations were not reference on the I-200 arrest warrant is troubling, but there is no obvious place to note such information on that form. Thus, there is a dispute of fact as to whether Petitioner repeatedly violated the terms of his parole. If Respondent's view of the facts is correct, it is at least arguable that providing Petitioner with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight. In similar circumstances, courts have refused to release the petitioners but have ordered timely bond hearings.

No. 1:25-cv-01035-JLT-HBK, 2025 WL 2495767, at *11–12 (E.D. Cal. Aug. 28, 2025). Here, as in *Martinez Hernandez*, petitioner has provided some explanation for the purported violations of his supervised release, as described above, but disputing the facts of whether he violated the

8

conditions of his release does not demonstrate that his detention was pretextual. *See J.S.H.M v. Wofford*, No. 1:25-cv-01309-JLT-SKO, 2025 WL 2938808, at *15–16 (E.D. Cal. Oct. 16, 2025) (finding that the petitioner's violation of the conditions of his release may have constituted a change in circumstances warranting detention, denying release because the violations were not obviously a pretextual reason for detention, and ordering that the petitioner be provided with a bond hearing). Here, the arrest warrant for petitioner did not mention the violations of his ISAP, as in *Martinez Hernandez*, though the officers arresting him showed him "a record of his late photo submissions and the missed home visit." (Doc. Nos. 1 at ¶ 25; 1-3.) The court therefore concludes, applying the reasoning in *Martinez Hernandez* and *J.S.H.M*, that petitioner is not entitled to immediate release but is entitled to an in-custody bond hearing.

The court therefore concludes that petitioner has demonstrated a likelihood of success on the merits of his procedural due process claim. Accordingly, the first *Winter* factor favors granting petitioner's motion for temporary restraining order.

        2.      <u>Irreparable Harm</u>

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). "Moreover, the Ninth Circuit has recognized the 'irreparable harms imposed on anyone subject to immigration detention' including 'the economic burdens imposed on detainees and their families as a result of detention.'" *Souza*, 2025 WL 3263897, at *3 (quoting *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017)). The court therefore concludes that petitioner has demonstrated irreparable harm through his continued detention without a bond hearing. Accordingly, the second *Winter* factor favors granting petitioner's motion for temporary restraining order.

        3.      <u>Balance of Equities and Public Interest</u>

The consideration of the balance of equities and the public interest in an injunction merge "[w]hen the government is a party[.]" *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). "Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, the public has a strong interest in upholding procedural protections against unlawful detention." *Hoac v. Becerra*,

9

1  No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *6 (E.D. Cal. July 16, 2025) (internal

2  quotation marks omitted) (quoting *Vargas v. Jennings*, 2020 WL 5074312, at *4).

3      Petitioner has demonstrated that he will likely succeed on the merits of his procedural due

4  process claim for the reasons explained above.  Therefore, the court concludes that consideration

5  of the last two *Winter* factors also favor granting petitioner's motion for temporary restraining

6  order.

7  **B.**    **Motion to Proceed Under Pseudonym**

8      Petitioner moves to proceed under pseudonym in this action because he is currently

9  seeking asylum in the United States.  (Doc. No. 4 at 3–4.)  Petitioner observes that disclosure of

10  his name could cause his family to face retaliation.  (*Id.*)  Petitioner also argues that litigation of

11  this petition may require disclosure of his private medical information and "disclosure of such

12  information could lead to stigma and further harm" petitioner.  (*Id.* at 3.)

13      "The normal presumption in litigation is that parties must use their real names."  *Doe v.*

14  *Kamehameha Schs./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010).  However,

15  the court may "conceal[] parties' identities in order to protect them from retaliation by third

16  parties and also to protect nonparties from reprisals."  *Does I thru XXIII v. Advanced Textile*, 214

17  F.3d 1058, 1067 (9th Cir. 2000).  "[A] party may preserve his or her anonymity in judicial

18  proceedings in special circumstances when the party's need for anonymity outweighs prejudice to

19  the opposing party and the public's interest in knowing the party's identity."  *Id.* at 1068.  Where

20  "pseudonyms are used to shield the anonymous party from retaliation, the district court should

21  determine need for anonymity by evaluating the following factors:  (1) the severity of the

22  threatened harm; (2) the reasonableness of the anonymous party's fears; and (3) the anonymous

23  party's vulnerability to such retaliation."  *Id.* (citations omitted).

24      Petitioner, as noted above, has a currently pending asylum claim.  The court therefore

25  finds petitioner's fear of retaliation to be supported and reasonable.  *See Doe v. Becerra*, 787 F.

26  Supp. 3d 1083, 1095–96 (E.D. Cal. 2025) (finding that the petitioner, who was seeking

27  withholding of removal through an asylum application, reasonably feared political persecution

28  and that proceeding under a pseudonym was justified).  Moreover, the public interest in

1  petitioner's identity in this case is minimal and outweighed by petitioner's present need for
2  anonymity.  *Id.*  The court will therefore grant petitioner's motion to proceed under pseudonym at
3  this stage in the litigation, without prejudice to respondents filing a future motion to revoke such
4  protection.

**CONCLUSION**

For the reasons above,

1. Petitioner's motion for a temporary restraining order (Doc. No. 2) is GRANTED in part as follows:

    a. Respondents are ORDERED to provide petitioner a bond hearing within five (5) days of the date of entry of this order;

    b. Within three days of the bond hearing, respondents shall file a status report in this case confirming that petitioner has been provided the bond hearing;

    c. Petitioner's request for a temporary restraining order ordering respondents to immediately release him is DENIED without prejudice;

    d. Petitioner's request for an order temporarily restraining respondents from removing him from the United States is DENIED without prejudice;

2. Under the circumstances of this case, petitioner will not be required to post bond pursuant to Rule 65(c) of the Federal Rules of Civil Procedure;

3. Petitioner's motion to proceed under pseudonym (Doc. No. 4) is GRANTED; and

4. The parties are directed to meet and confer and, if possible, submit a joint proposed briefing schedule and hearing date with respect to any motion for a preliminary injunction no later than fourteen (14) days from the date of entry of this order.

IT IS SO ORDERED.

Dated:  **December 4, 2025**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE

11